**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| BEATTIE B. ASHMORE, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR SCOTT A. KOHN, FUTURE INCOME PAYMENTS, LLC, JOSEPH P. HIPP, KRAIG S. AIKEN, DAVID N. KENNEALLY, AND AND MELANIE JO SCHULZE-MILLER, <br><br>Plaintiff,<br><br>vs.<br><br>HUBERTO GARZA JR.,<br><br>Defendant. | No. 6:20-cv-____-BHH <br><br><br><br><br>**COMPLAINT**<br>(**JURY TRIAL DEMAND**) |

The Receiver, Beattie B. Ashmore, ("Receiver") hereby files this Complaint and alleges as follows:

1. Plaintiff is the Court appointed Receiver in *In Re Receiver*, 6:19-cv-1112-BHH and has been tasked, *inter alia*, with locating, managing, recouping, and distributing the assets of the Scott A. Kohn ("Kohn")/Future Income Payments, LLC ("FIP") investment scheme associated with the criminal case of *United States v. Kohn, et al*, 6:19-cr-239-BHH.

2. Upon information and belief, Defendant Huberto Garza Jr. ("Garza") is a citizen of Texas.

3. The instant Complaint is so related to the *In Re Receiver*, 6:19-cv-1112-BHH case and the underlying criminal case, *United States v. Kohn, et al*, 6:19-cr-239-BHH that it forms part of the underlying case or controversy.

1

4. The Receiver filed the Order of Appointment in all relevant federal districts pursuant to 28 U.S.C. § 754 and venue is proper in the District of South Carolina. Service of process will be accomplished pursuant to 28 U.S.C. §1692.

5. Subject matter jurisdiction in this case is based upon 28 U.S.C. § 1331 and 1367(a).

**GENERAL ALLEGATIONS**

6. As a result of the indictment of Kohn and FIP,[1] an Order was entered on April 15, 2019, and was amended on April 30, 2019, July 18, 2019, March 3, 2020, September 1, 2020 and October 9, 2020 ("Court Order"), appointing Beattie B. Ashmore as the Receiver and setting forth the duties of the Receiver to include pursuing, seizing, marshaling and safeguarding the assets of Kohn, FIP, Hipp, Aiken, Kenneally, Schulze-Miller and other so defined entities (hereinafter the "FIP Receivership Entities").

7. Kohn was at all relevant times a prior convicted felon having served an active jail sentence in the United States Bureau of Prisons. That information was available in the public domain.

8. The Court Order, *inter alia*, includes the directive to bring suit for the disgorgement of moneys, including specifically instituting legal proceedings against individuals who are in unlawful and/or unjustified possession of moneys that flow from the Ponzi scheme orchestrated by Kohn, FIP and others. (*See* Court Order at Para. 2.)

9. On November 20, 2019, Aiken pled guilty to one count of conspiracy to commit wire and mail fraud related to the underlying criminal Ponzi scheme.

---

[1] A Superseding Indictment was returned by the grand jury on July 9, 2019, adding Joseph P. Hipp ("Hipp"), Kraig S. Aiken ("Aiken") and David N. Kenneally ("Kenneally") as Defendants, and a Second Superseding Indictment was returned on August 11, 2020, adding Melanie Jo Schulze-Miller ("Schulze-Miller") as a Defendant.

10. On July 22, 2020, Kenneally pled guilty to one count of conspiracy to commit wire and mail fraud related to the underlying criminal Ponzi scheme.

11. To effectuate the fraudulent investment scheme, Kohn, through other persons (indicted and unindicted) and his company FIP, unlawfully purchased income streams from "Sellers" and recruited "Buyers" via fraudulent means to purchase the income streams.

12. Specifically, Sellers, most often veterans, were high debt, high credit risk individuals who were targeted by FIP and FIP Receivership Entities for cash advances and were solicited (and persuaded) to sell their future monthly pension streams for an amount that was far less than their value, essentially equating to a predatory lending practice. For example, in 2013, a Seller received $3,700.00 for an $18,000.00 pension stream that the Seller was then to pay back at $300.00 a month for 60 months.

13. These pension streams that were purchased by FIP were then sold to Buyers (investors) who were individuals who had qualified and non-qualified investment funds. Buyers were solicited by unscrupulous insurance agents and/or wealth advisors who, based upon false and egregious misrepresentations to investors (such as promising guaranteed returns on their investment because they were backed by government pensions), convinced Buyers to rollover or place their current investment funds into the FIP investment product.

14. From the beginning, Buyers were generally told, informed and/or led to believe that the income stream from Sellers was government backed (insured), had been sanctioned by state and federal governments, and was protected by an adequately funded reserve account, and that their investment dollars were going to help veterans via the loan funding mechanism.

15. Defendant sold FIP products and received commissions either directly or indirectly as

3

a result of those sales.

16. During the entire time of the operation, which began in 2011, the investment scheme was operated as a Ponzi scheme. Money from later Buyers (investors) was used to pay earlier Buyers.

17. At all times, the approximate breakdown of moneys that flowed from Buyers was as follows: approximately ten percent was used to pay "commissions" for sale of the fraudulent investments; approximately twenty percent went to the actual "investment" platform (i.e. to fund the Seller advances or "loans"), and incredulously seventy percent went to Kohn/FIP and was not originally used as part of the funding mechanism. Upon information and belief, Defendant was aware of these circumstances and never should have recommended this illegal investment to his clients.

18. Seventy percent of the Buyer's money was retained and used by Kohn/FIP and others to do as they wished. This money was never used to meaningfully fund the reserve account. This money and all FIP accounts funded with this money were used to perpetuate the fraud and for Kohn's personal pleasure. FIP used these funds each month to make up the difference between the total received from Sellers and the total due to Buyers.

19. As the scheme progressed, Sellers began to default at higher rates on their payment obligations. Many states issued cease and desist orders to FIP with regard to its illegal practice of purchasing income streams and the primary source of funds to pay investors therefore began to dwindle. These "state enforcement actions" were known or should have been known to the Defendant and not disclosed to the Buyers. Over time, the very limited amount of Seller money that was being used to perpetuate the scheme evaporated and more and more of the Buyers' money (i.e. money that was in the FIP accounts) was being used to

4

pay other Buyers.

20. To effectuate the sale of the income streams, Kohn, through FIP and others, created a massive network of agents who received a commission for the sale of the FIP product. The total percentage of commissions paid on each sale ranged from five percent to eleven percent (5%-11%), and that amount was split among a number of individuals (for example, Joe Hipp, Ben Geber, David Valencia and many others) and agents, with some individuals receiving a percentage of every dollar brought into the scheme. The total commissions paid to agents exceeded tens of millions of dollars, paid at the expense of hard-working individuals that were deceived. Defendant was among these agents and knew how inappropriate the FIP products were. Defendant should not have recommended or sold this illegal investment, and he should have provided full disclosure to his clients about all of these improper circumstances.

21. Defendant was an agent who acted in concert and conspired with Kohn, Hipp, FIP and others and earned commissions, directly or indirectly, from the sale of the FIP product beginning in approximately 2017 until at least 2018.

22. The services provided by Defendant were illegal because they involved the sale of products (unregistered securities) that the Defendant was not licensed to sell. Upon information and belief, these agents, including Defendant, had no Errors and Omissions coverage for such transactions and had no federal, state or regulatory authority to sell these products.

23. Defendant is not a licensed securities broker and is not licensed to sell any products other than insurance products.

24. Upon information and belief, Defendant was knowingly and intentionally selling

5

unregistered securities, including the FIP products, in violation of section 5 of the Securities Act of 1933, as amended, and applicable state securities laws, and was using those unlawful sales to receive commissions.

25. Upon information and belief, Defendant provided information to Buyers that was false and misleading through marketing material and high pressure seminar style information sessions. Defendant either made these representations with knowledge of their falsity or with reckless disregard for the truth of the statements.

26. Upon information and belief, Defendant communicated false and misleading statements to Buyers and potential Buyers concerning the FIP products, or made statements that omitted material facts so as to make the statements misleading.

27. Upon information and belief, Defendant sold FIP products to Buyers all the time with the knowledge that numerous state and/or federal agencies had initiated actions related to the FIP products. Upon information and belief, with full knowledge of these actions and cease and desist orders, Defendant did not disclose such activities and investigations to potential Buyers of the FIP products.

28. Agents, in this case Defendant, who received commissions for the sale of the FIP products, did so at the expense of those Buyers who lost all or part of their investment.

29. Defendant failed to perform due diligence regarding Kohn, FIP and pension products in general, and knew, or was reckless in not knowing the criminal history of Kohn and the true facts surrounding the FIP products. Upon information and belief, agents, including Defendant, represented to Buyers that FIP had been thoroughly researched and was safe (although Kohn was a previously jailed convicted felon, a fact easily learned from due diligence) and represented Kohn to be qualified and credible.

30. Upon information and belief, Defendant received at least thirty-nine thousand eighty-three dollars and sixty cents ($39,083.60) in commissions directly or indirectly from the sale of FIP products related to a Ponzi scheme that is the subject of the underlying criminal indictment.

## FOR A FIRST CAUSE OF ACTION
### (ACCOUNTING)

31. Plaintiff alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, as if fully repeated herein.

32. As of the date of the filing of this Complaint, the Receiver has performed and continues to perform an investigation and analysis of the proceeds of the fraudulent investment offering and the activities of the Ponzi scheme and Defendant, including the payment of commissions to Defendant.

33. As a part of this investigation, the Receiver has endeavored to determine how much money was actually paid to the Defendant and to others with whom Defendant was working. Based on the information currently available to him, the Receiver has made an initial calculation and allocation of the amounts paid to Defendant.

34. The Receiver understands that the information available to him may be incomplete. Accordingly, the Receiver is entitled to and hereby demands an accounting from the Defendant, including the return of all moneys he received, directly or indirectly, in connection with his sale of FIP products or in connection with his work with the FIP Receivership Entities.

## FOR A SECOND CAUSE OF ACTION
### (UNJUST ENRICHMENT/MONEY HAD AND RECEIVED)

35. Plaintiff alleges and incorporates herein by reference each and every allegation set

7

forth in the preceding paragraphs, as if fully repeated herein.

36. Defendant received commissions associated with the sale of products that were part of a criminal Ponzi scheme orchestrated and effectuated by Kohn, FIP and others. These commissions total at least thirty-nine thousand eighty-three dollars and sixty cents ($39,083.60).

37. Defendant was the recipient of a non-gratuitous benefit from Kohn/FIP in that Defendant was the recipient and beneficiary of commissions associated with the sale of an unorthodox, illegal investment product that was also part of a criminal Ponzi scheme.

38. Defendant appreciated and had knowledge of these benefits that were conferred on him by Kohn/FIP.

39. Payments to Defendant were made from the investments of other Buyers (investors).

40. Defendant has retained the benefit of these payments to the detriment of Buyers (investors) and the FIP Receivership Entities.

41. Defendant has no legitimate claim to the commissions because he was not a licensed securities broker and/or he was selling an unregistered security, and it would be inequitable for Defendant to have accepted or to retain this benefit. Defendant has received money to which the Receiver is in equity and good conscience entitled.

42. Defendant has been unjustly enriched and should repay Plaintiff at least thirty-nine thousand eighty-three dollars and sixty cents ($39,083.60) for the ultimate benefit of the Receivership estate and distribution to the Court-approved victims of the Ponzi scheme, in addition to whatever further amounts by which Defendant has been unjustly enriched.

**FOR A THIRD CAUSE OF ACTION**
**(FRAUDULENT TRANSFER: VIOLATION OF THE TEXAS UNIFORM**
**FRAUDULENT TRANSFER ACT, Tex. Bus. & Com. Code Ann. § 24.0001,** *et seq.*

**AND/OR THE CALIFORNIA UNIFORM VOIDABLE TRANSACTIONS ACT, Civ. Code § 3439, *et. seq.* AND/OR OTHER APPLICABLE LAWS CONCERNING FRAUDULENT & VOIDABLE TRANSACTIONS)**

43.     Plaintiff alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, as if fully repeated herein.

44.     Defendant was an agent who received commissions related to the sale of FIP products.

45.     FIP was engaged in an enterprise that had all the characteristics of a Ponzi scheme.

46.     Defendant received commissions in furtherance of the Ponzi scheme.

47.     At the time Defendant was paid commissions, tens of millions of dollars were owed to Buyers (investors) of the FIP products in gross excess of the funds on hand. As such, at all times relevant hereto, the FIP Receivership Entities, including all of their affiliated entities and funds, were insolvent in that: (i) their liabilities exceeded the value of their assets by millions of dollars; (ii) they could not meet their obligations as they came due; and/or (iii) at the time of the transfers to Defendant described herein, the FIP Receivership Entities were left with insufficient capital to pay their investors and/or creditors.

48.     Defendant received commission payments, directly or indirectly, from FIP (through the Ponzi scheme) and such payments were from investments made by Buyers (investors) and were made with the actual intent of hindering, delaying, or defrauding other Buyers (investors) participating in the Ponzi scheme.

49.     Defendant gave nothing of value in exchange for his payments from FIP.

50.     Upon information and belief, Defendant was not a broker-dealer and/or agent licensed to sell FIP products and sold unregistered securities in violation of state and federal law.

51.     Defendant's conduct made it possible for FIP to engage in a Ponzi scheme and

Defendant knew or should have known that FIP was engaged in a Ponzi scheme.

52. The Receiver was only able to discover the fraudulent nature of the above-referenced transfers made by Kohn and his accomplices through the FIP Receivership Entities after Kohn and his accomplices were removed from control of the FIP Receivership Entities upon the appointment of the Receiver. Moreover, the Receiver also had to undertake a time-consuming and extensive review of thousands upon thousands of paper and electronic documents relating to the FIP Receivership Entities to discover the fraudulent nature of the transfers. The Receiver's investigation is still ongoing. No amount of reasonable diligence by the Receiver could have detected the transfers sooner. As a result, there may be evidence of other assets belonging to the Receivership Estate or other fraudulent transfers of funds that the Receiver has yet to discover. If such transfers or assets are later discovered, the Receiver will seek to amend this Complaint and/or his theories to assert all possible claims regarding such transfers or assets, including by alleging violation of laws that may be determined to apply to the facts of this case upon discovery and further investigation.

53. Payments to or for the benefit of Defendant in the amount of at least thirty-nine thousand eighty-three dollars and sixty cents ($39,083.60) should be voided and should be repaid to the Plaintiff pursuant to the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. §24.001, *et seq*. (including any such predecessor acts and laws), the California Uniform Voidable Transactions Act, Civ. Code § 3439, *et seq.* (including any such predecessor acts and laws), and any other applicable laws that, after discovery and further investigation, are determined to apply to the facts of this case concerning voiding of fraudulent transfers and transactions.

WHEREFORE, Plaintiff prays for an accounting from the Defendant, including the return of all moneys he received, directly or indirectly, in connection with his sale of FIP products or in connection with his work with the FIP Receivership Entities; a judgment ordering return of at least thirty-nine thousand eighty-three dollars and sixty cents ($39,083.60), interest as allowed by law, as may be permitted, and for his costs, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper, including but not limited to all applicable pre-judgment and post-judgment interest and disbursements of this action.

Respectfully submitted,

**THE TOLLISON LAW FIRM, P.A.**

/s/L. Walter Tollison, III
L. Walter Tollison, III, Fed. Bar No. 4117
Walt.tollison@thetollisonlawfirm.com
/s/Lauren S. Price
Lauren S. Price, Fed. Bar No. 10406
Lauren.price@thetollisonlawfirm.com
18-B S. Markley Street
Greenville, South Carolina 29601
Ph: (864) 451-7038 / Fax: (864) 451-7591

**VANDERBLOEMEN LAW FIRM, P.A.**

Thomas E. Vanderbloemen
Federal Bar No. 9858
tom@vanderbloemenlaw.com
330 East Coffee Street
Greenville, South Carolina 29601
Phone:  (864) 250-9530

*Attorneys for the Receiver*

November 17, 2020
Greenville, South Carolina